### BOYER v. CLEVELAND PNEUMATIC TOOL CO.

(Circuit Court, N. D. Ohio, E. D.    May 21, 1909.)

No. 6,284.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PNEUMATIC HAMMER.
> The Boyer patent, No. 667,863, for a pneumatic hammer having a length of stroke greater than the length of the hammering piston, as to claims 1 to 9 and 32, is void for anticipation; also *held* not infringed, if conceded validity.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Rector & Hibben, for complainant.

Cook, McGowan & Foote and E. Hayward Fairbanks, for defendant.

TAYLER, District Judge. This is a suit charging the infringement by the defendant of claims 1 to 9, inclusive, and claim 32, of patent

No. 667,863, dated February 12, 1901, for a pneumatic hammer, issued to Joseph Boyer. This invention relates, as described by the patentee, more particularly to that class of tools, commonly known as "pneumatic hammers," in which the reciprocating piston operates as a hammer or striker to deliver blows upon a chisel or other working tool inserted in or carried by the front end of the cylinder; and has for its principal object the provision of means whereby the piston may be permitted a longer stroke and thereby enabled to strike a harder blow than had theretofore been usual in devices of that kind.

The drawings show an ingenious and complicated device whereby the hammering piston is given a length of stroke greater than the length of the piston. By thus lengthening the stroke, as compared with the length of the piston itself, it is manifest that a much more powerful blow can be given than where the length of the stroke is limited by the length of the piston. In the hammers in which the length of the piston regulates the length of the stroke, the inlet and outlet of compressed air are controlled by the opening and closing of ports or valves, depending on whether the port is covered or uncovered by the moving piston. In the device where the length of the stroke is greater than the length of the piston, it is manifest that the control of the entry or exit of compressed air must be otherwise than by the mere length of the piston itself. The patent in suit accomplishes this result, and the question here involved is whether or not it had been anticipated by previous use or patents.

The device which defendant uses is made in accordance with patent No. 735,589, issued August 4, 1903, to C. B. Richards.

A large number of patents are cited as showing anticipation of the Boyer patent of 1901. Among them, and not intending to include all that may be important, are British patents to Gray, 1,095 of 1863, Johnson, 3,125 of 1872, and Floyd, 2,693 of 1877, as well as the American patents to Manson, No. 152,391, Harthan, No. 590,661, Wren, No. 303,344, Von Buhler, No. 510,155, Clement, No. 522,511, and Allen, No. 194,396.

I have come to the conclusion, upon an examination of the prior art:

1. That the idea of a pneumatic hammer which had a stroke longer than the length of the piston was old when Boyer took out his patent. Manson, No. 152,391, granted June 23, 1874; Harthan, No. 590,661, granted September 28, 1897. The pistons in these hammers were controlled by tappet or mechanically actuated valves, while in the Boyer hammer the piston was controlled by a fluid actuated valve.

2. That the valve arrangement which he described—that is to say, a piston-controlling valve, operated by fluid pressure only and controlling the reciprocations of the piston in the cylinder—was also old. Indeed, Boyer admits that this method of operation and control of pistons is old. On page 4 of the patent in suit, at line 43, he says:

"I am aware that it has heretofore been proposed in steam engines of certain types to operate the valve or valves by means of air compressed by the piston; but I am not aware of any adaptation of such idea to devices such as pneumatic hammers, nor of any embodiment of it in steam engines in a form suitable for use in pneumatic hammers."

Assuming that this admission is to be taken as stating exactly the state of the art at the time it was made, it cannot be seriously contended that there was any novelty in the introduction of the idea of a fluid-actuated valve in a pneumatic hammer.

3. That the difficulty of determining whether or not the Boyer patent is entitled to precedence or priority depends upon the differentiation between that patent and those which preceded it as a mere mechanical appliance and not involving any principle of operation. In this respect there is certainly no infringement by the defendant of the patent in suit.

4. Defendant offered in evidence the file wrapper, contents, and drawings in the matter of the application of Charles K. Pickles, filed June 16, 1902, for improvement in pneumatic impact tools. This is not to be considered evidential, but argumentative; and argumentatively it is convincing, and may be summarily stated as follows: The Boyer patent was issued February 12, 1901. June 16, 1902, Charles K. Pickles filed his application for a patent for an improvement in pneumatic impact tools. His claims, nine in number, were identical with claims 1 to 8 and claim 32 of the Boyer patent. Manifestly, this was an application filed in conformity to rule 94 of the Patent Office, where a new applicant claimed to be the real inventor of a device for which a patent had previously been granted to another person, and he therefore sought an interference, whereby the question of priority of invention would be heard in the Patent Office. There was an incidental controversy, not important here, growing out of a claim of want of consistency between Pickles' claims and the drawings which he showed of his device.

The examiner rejected claims 1 to 8 on the British patents to Gray, Johnson, and Floyd, and also on the Boyer patent in suit. Claim 9 was held to be objectionable for a mechanical reason, and also because it was anticipated by the British patent to Floyd.

On an application to reconsider, and also on an allowance of the claims and declaration of the interference with the Boyer patent, the claims were again considered and again rejected for the reasons set out in the first rejection, with this additional observation: That the English patents on account of which the Pickles application was rejected were not a part of the record in the Boyer application.

The case was again heard on application of Pickles by another examiner, and he adhered to the former conclusion, that claims 1 to 8 were objectionable for the reasons stated in the first rejection, claim 9 for the reason that had been theretofore given, and that all the claims were held anticipated by the references of record.

On a petition from the action of the examiner, an appeal was allowed to the examiners in chief, who held claims 1 to 8, inclusive, were anticipated by the British patents to Gray and Johnson, and the grasping handle feature by the patent to Gray.

Finally, it was heard by the examiners in chief on appeal, who held that claims 1, 2, 3, and 4 were fully anticipated by the British patent to Gray, that 5 and 6 were in their several parts anticipated by the Gray and Floyd patents, 7 and 8 by the Johnson patent, and 9 for a reason unimportant in this connection.

Then the case was heard on appeal from the examiners in chief to the Commissioner of Patents, who held that all the claims are rejected on the following references: Boyer, and British patents to Gray, Johnson, and Floyd. The Commissioner sets out in his opinion the details, in which it appears that the British patents anticipated the claims of the Pickles application. Of course, if they anticipated the claims of the Pickles application, they must have anticipated the claims of the Boyer patent.

As was observed in the early part of the discussion of this opinion, the argument presented by the Patent Office against the novelty and invention of the Pickles application, and, therefore, of the Boyer patent, in so far as these claims are concerned, is convincing.

This subject was most carefully and exhaustively inquired into by the several examiners and by the Commissioners of Patents, at least six independent investigations having been made. In the course of the decisions we discover that the anticipatory patents cited against Pickles' application were not before the Patent Office when the Boyer application was considered. If they had been, it would make no difference in the persuasiveness of the argument, because whatever might be said to be an anticipation of claims 1 to 9 of the Pickles application was an anticipation of claims 1 to 8 and claim 32 of the Boyer patent. So that we have not only the moral persuasiveness of many and exhaustive investigations by the experts of the Patent Office respecting the history of the art and the question of anticipation, but also the detailed argument presented by the several officials of the Patent Office on the several occasions when this important question was before it. The argument made by these examiners and the Commissioner are absolutely convincing to me, apart from the persuasiveness of the Harthan and other patents cited in the proof and argument in this case, that the Boyer patent is, in so far as claims 1 to 8 and claim 32 are concerned, invalid because of anticipation. Certainly these claims, as well as claim 9, are invalid, if given sufficient scope to cover the alleged infringing device.

The bill is, therefore, dismissed, at complainant's costs.